## STATE v. WILLIAMS.

No. 2015.   Decided July 10, 1909 (103 Pac. 250.)

1. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES. In a prosecution for rape on a child of ten, evidence of prosecutrix that after the assault had been completed defendant stated that there were other female children that had come to his house with whom he had committed the same offense was inadmissible. (Page 277.)

2. WITNESSES — CROSS-EXAMINATION OF ACCUSED. Where, in a prosecution for rape, defendant testified, in his own behalf, and denied that he had taken any undue liberties with prosecutrix, questions asked on cross-examination over defendant's objection concerning other little girls who, both before and after the offense charged, had visited defendant, so as to convey the idea that he permitted such children to call on him that he might debauch them, were inadmissible to affect his credibility or to test his memory. (Page 281.)

36 Utah—18

3. WITNESSES—CROSS-EXAMINATION—INCOMPETENT QUESTIONS. In a prosecution for rape, it was reversible error for the state on cross-examination of the accused to compel him over objection to answer questions conveying the idea that he had permitted other children to call at his home in order that he might ravish them. (Page 282.)

4. RAPE—EVIDENCE OF·PROSECUTRIX—DELAY OF COMPLAINT—INSTRUCTIONS. Where, in a prosecution of a man seventy years of age, of previous good character, for rape committed on a female child ten years old, it appeared that prosecutrix first complained of the offense nearly three years after it was alleged to have occurred, the court erred in refusing to charge that the jury might consider prosecutrix's delay in making complaint in determining the weight to be given to her testimony. (Page 284.)

APPEAL from District Court, Third District; *Hon. John F. Chidister,* Judge.

The defendant, Nathaniel Williams, was convicted of rape and appeals.

REVERSED.

*Corfman & Rydalch* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

McCARTY, J.

The defendant was informed against in the Fourth Judicial District Court, sitting at Provo, Utah, for the crime of rape alleged to have been committed on a female child under thirteen years of age. The defendant was tried, found guilty of an assault with intent to commit rape, and sentenced to serve a term of seven years in the state prison. To reverse the judgment of conviction, the defendant has appealed to this court.

The record shows that the crime was committed, if committed at all, at defendant's residence in Provo City, Utah, about the middle of August, 1905. The child on whom the alleged assault was committed first made complaint of

the outrage about the first of the year 1908, nearly three years after it occurred. The defendant at the time of the alleged assault was seventy years of age, and had lived in Provo for more than fifty years. He was a man of good character, and up to the time of this trouble his reputation for chastity and virtue was good. He owned and lived in a house of two rooms in the residence district of Provo City, and in close proximity of homes and residences of other people. He was a widower; his wife having died about three years prior to the alleged assault. He lived alone in one room and did his own housework. The other room he rented to university students during the school seasons. Sometimes it was occupied by lady students and at other times by male students. At the time of the alleged assault school was closed for the season, and this extra room was unoccupied. The principal witnesses against the defendant were the prosecutrix, who, at the time the alleged crime was committed, was ten years of age, and another little girl who was twelve years of age. They testified that they went to the defendant's home at about two o'clock p. m. on the afternoon of the day on which it was claimed that the crime was committed, and were admitted into the house by defendant; that, on entering the room in which defendant was living, they went and sat down on the side of the bed, and the defendant asked the prosecutrix if he "could play with her," and, on receiving an affirmative answer, he pushed her over on the bed, and had sexual intercourse with her; that he was about five minutes completing the act; that the other little girl got off the bed and sat in a chair until defendant got through with his criminal assault on the complaining witness; that then defendant had criminal relations with the other little girl also; that he then gave each of them a small sum of money, one ten and the other twenty-five cents, and they immediately thereafter left the house; that they were at defendant's house about twenty-five minutes on that occasion. The prosecutrix also testified that this was the first time she had ever met defendant and the first time she was ever at his home. She further

testified that defendant's sexual organ penetrated her, but not far enough to cause her any pain. On cross-examination she testified that at the preliminary examination in which defendant was bound over to answer to the district court she was called as a witness, and testified that there was no penetration and in answer to the following question, "While Mr. Williams was laying on you in the manner you described, what, if anything did you feel on your legs and upon your private parts," said, "I didn't feel anything." She also testified that at the preliminary hearing questions were put to her and she answered as follows: "Q. But you are sure that the old gentleman never had his private parts in your private parts? A. Yes, sir. Q. You are sure of that—you never felt it, did you? A. No, sir. Q. You are sure of that? A. Yes, sir." The other girl testified that her mother on several occasions prior to the alleged assault had sent her to defendant's home with bread, and that the only time "anything happened" was when she went to defendant's home with the prosecutrix on the occasion referred to. In reply to the question, "You only went there once that anything happened," she answered, "Yes, sir. I went there once or twice after that. He gave us money, but nothing happened." Her testimony was also impeached by showing that before the trial she had stated to parties that no such occurrence—criminal conduct on the part of the defendant—such as she testified to at the trial had ever taken place. She, however, endeavored to reconcile her testimony and her former statements by saying that she meant that nothing of the kind had taken place within the two years next preceding the time of the filing of the information upon which defendant was tried. She also admitted that in the year 1904, a year prior to the alleged assault, she falsely stated to a party whom she met on the street that she had just come from defendant's home, and that he had murdered a little girl—a friend of hers—and rolled the body up in some bedding. Several physicians and surgeons of high professional standing were called as witnesses, and testified that it would be impossible for a man

of mature years to have sexual relations, or attempt to have such relations, with a female child of the age of ten years or under (in the manner in which the evidence introduced by the state shows the crime in question was accomplished), "without causing great physical pain and injury to the sexual organs of such female."

From the record it appears that while the prosecutrix was upon the witness stand, and after she had testified to the facts and circumstances leading up to and surrounding the alleged assault upon her by the defendant and to what he said and did immediately thereafter, questions were asked by the district attorney and answered by the witness as follows: "Q. Did he say anything about any other girl? A. Why, he said that there were some girls from the First ward came up that he would do the same thing. Q. Said what? A. Said there were some girls from the First ward that came up quite a bit, and he would do the same thing to them that he done to ———— (naming the girl who was with the complaining witness at the time of the assault) and I." Timely objections were made by the defense to this evidence on the grounds that it was immaterial, irrelevant, and incompetent. We think the admission of this testimony was error. At the time it is claimed this statement was made by defendant concerning his alleged criminal relations with other girls the crime for which he was on trial had been committed, and there was nothing left to be done on his part to complete it. The statement that he had committed like crimes with other girls in no way tended to elucidate or explain the alleged assault upon the complaining witness. It was a narrative or recital of transactions which were neither directly nor remotely connected with the crime under consideration. The crimes thus sought to be proved were committed on other parties at other times, and were entirely distinct and separate from the specific crime charged in the information, and formed no link in the chain of events leading up to and surrounding the offense, and did not tend in the remotest degree to prove

any fact whatever material to the issue. In fact, it is not claimed that there was any logical connection between the crime charged and those sought to be proved by this alleged statement of defendant, nor that proof of these other crimes tended to establish the one for which he was on trial. We can conceive of no purpose for which this evidence was introduced, unless it was to show a general disposition on the part of defendant to commit crimes of that character, and thereby increase the probability that he committed the one charged in this case.

The authorities uniformly hold in this class of cases that where a defendant is on trial for a particular crime evidence that he on some other occasion committed a separate and distinct crime wholly disconnected from the crime charged on some person other than the one mentioned in the information or indictment is never admissible:

"Proof of a distinct substantive offense is never admissible unless there is some logical connection between the two from which it can be said that proof of the one tends to establish the other. Thus in a prosecution for rape testimony would not be competent that at a time not comprehended within the *res gestae* the defendant had committed a rape on another woman." Gillett, Ind. & Col. Ev., section 57.

In Wharton's Am. Crim. Law, sec. 635, the author says:

"It is under no circumstances admissible for the prosecutor to put in evidence the defendant's general bad character, or his tendency to commit the particular offense charged, nor is it admissible to prove independent crimes, even though of the same general character, except when falling strictly within the exceptions stated."

The evidence under consideration does not fall within the exceptions referred to by the author. In 10 Enc. Ev. 597, the rule is stated as follows:

"In a prosecution for rape it is not competent for the state to introduce evidence tending to show that the defendant attempted to commit a similar offense upon a female other than the prosecutrix."

The same general question was involved in the case of *State v. Hilberg,* 22 Utah 27, 61 Pac. 215. Mr. Justice Miner, speaking for the court, said:

"The general rule in criminal cases, subject to exceptions, is well settled that, where one specific offense is charged, the commission of other offenses cannot be proven for the purpose of showing that the defendant would have been more likely to have committed the offense for which he was on trial, nor as corroborating the testimony relating thereto; but, where the offense consists of illicit intercourse between the sexes, such as is charged here, or in case of incest, adultery, or seduction, courts have relaxed the rule, and hold that previous acts of improper familiarity between the parties occurring prior to the alleged offense were admissible as explaining the acts, and as having a tendency to render it more probable that the act charged in the information was committed, though such acts would be inadmissible as independent testimony."

*Sutton v. Johnson,* 62 Ill. 209, was a civil action for an assault with intent to commit rape, and it was held that defendant's prior declaration that "he and his wife hadn't got along first rate, and he had to be too intimate with the hired woman," or "was forced to be too intimate with the hired woman" (it not appearing that the "hired woman" mentioned was the person assaulted), was incompetent. The great injustice that would be done by admitting such evidence is very clearly and tersely stated by Allen, J., in *Coleman v. People,* 55 N. Y. 90, wherein he says:

"The general rule is against receiving evidence of another offense. A person cannot be convicted of one offense upon proof that he committed another, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It would lead to convictions upon the particular charge made by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one."

And likewise in the case of *State v. Renton,* 15 N. H. 169, it was said:

"Where a person is charged with an offense, it is important to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment, which alone he can be expected to be prepared to answer. It is therefore not competent for the prosecutor to give evidence of facts tending to prove another distinct offense for the purpose of raising an inference that the prisoner has committed the crime in question. Nor is it competent to show that he has a tendency to commit the offense with which he is charged. Thus on a prosecution for an infamous offense an admission by the prisoner that he had committed such an offense at another time was held to have been properly rejected. *Rex v. Cole*, cited 1 Ph. on Ev. 499 (8th Ed.). The case of the respondent is to be tried upon its own merits."

So in the case of *Janzen v. People,* 159 Ill. 440, 42 N. E. 862, the defendant was charged with having committed the crime of rape upon his daughter. Evidence that he had also committed rape upon another daughter was admitted over defendant's objection. On appeal the Supreme Court, speaking through Chief Justice Craig, said:

"Any evidence which tended to prove the defendant guilty of the crime alleged in the indictment was proper for the consideration of the jury, but evidence which tended to prove him guilty of another crime—another rape—on some person not named in the indictment was not competent. When a defendant is put upon trial on an indictment, he is presumed to be ready to meet the charge contained in the indictment, but he is not presumed to be ready to defend against a charge not made against him therein, nor does the law require him to meet such a charge."

In the case of *Shaffner v. Commonwealth,* 72 Pa. 60, 13 Am. Rep. 649, a question involving the same principle was before the court, and in the course of the opinion in that case it is said:

"It is a general rule that a distinct crime, unconnected with that laid in the indictment, cannot be given in evidence against a prisoner. It is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another. Logically the commission of an independent offense is not proof in itself of the commission of another crime. Yet it cannot be said to be without influence on the mind, for certainly, if one be shown to be guilty of another crime equally heinous, it will prompt a more ready belief that he might have committed the one with which he is charged. It

therefore predisposes the mind of the juror to believe the prisoner guilty. . . . It is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury. . . . From the nature and prejudicial character of such evidence, it is obvious it should not be received, unless the mind plainly perceives that the commission of the one tends by a visible connection to prove the commission of the other by the prisoner."

The following authorities also illustrate and uphold this doctrine: 4 Elliott, Ev., sec. 3103; 23 A. & E. Ency. L. (2d Ed.), 247, 871; Wharton, Crim. Ev. (9th Ed.), sec. 30; Underhill, Crim. Ev., sec. 87; McKelvey, Ev., pp. 144, 145; *People v. Bowen,* 49 Cal. 654; *Sullivan v. O'Leary,* 146 Mass. 322, 15 N. E. 775; *People v. Sharp,* 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851; *State v. Goetx & Martin,* 54 Mo. 85; *People v. Tucker,* 104 Cal. 440, 38 Pac. 195; *Parkinson v. People,* 135 Ill. 401, 25 N. E. 764, 10 L. R. A. 91; *People v. Lane,* 100 Cal. 379, 34 Pac. 856; *State v. Lapage,* 57 N. H. 245, 24 Am. Rep. 69; *People v. Stewart,* 85 Cal. 174, 24 Pac. 722; *People v. Corbin,* 56 N. Y. 363, 15 Am. Rep. 427.

The defendant testified in his own behalf and denied that he assaulted the prosecutrix, or that he took any undue liberties with her. On cross-examination the district attorney was permitted, over defendant's objections, to interrogate him at great length with reference to other little girls who had both prior and subsequent to the alleged commission of the crime charged visited, or called to see him, at his home. Many of these questions were asked in such a way as to convey the idea that the defendant permitted these little girls to call at his home in order that he might ravish and debauch them. The following are a few of the many questions that were asked by the district attorney: "The fact of the matter is, Mr. Williams, is this, isn't it, that your house up there has been frequented by these little girls almost constantly for the past five or six years?" "These children that you have named, not all, not all the time, but a number of children have been frequenting

your house for six or eight years past, haven't they—little girls?" "What did you have these children come to your house for?" "Why did you not say, 'My little ladies, keep away from here. I am living alone, and don't want you to come here at all?'" The cross-examination was interspersed with the following questions, and others of similar import. "You know what the —— girl (referring to one of the other girls) says about you? And she represented to you and her mother that you had ravished her, didn't she?" While the objections made to the last two questions were sustained by the court, nevertheless the asking of them in connection with the other questions referred to may well have led the jury to believe that defendant was guilty of other crimes similar to the one charged in the information. It is contended, however, that the questions were proper as tending to test defendant's memory, and to affect his credibility as a witness. The extent to which a defendant in a criminal action may be cross-examined for the purpose of testing his memory and affecting his credibility is defined and illustrated by this court in the case of *State v. Shockley,* 29 Utah 25, 80 Pac. 865, 110 Am. St. Rep. 639. Under the rule defining the extent to which the cross-examination in such cases may be carried for the purpose of testing memory and affecting credibility as declared in that case, the questions here complained of were clearly improper.

Before the questions under consideration were propounded to the defendant, he was examined at great length by the district attorney respecting visits and calls made at his home by other little girls, all of whom, it appears, resided in his immediate neighborhood. He frankly stated that certain girls, naming them, had frequently made friendly visits at his home, and that he had on numerous occasions given them small sums of money with which to purchase oranges and other eatables at the stores, and that he frequently met children on the streets and gave them money for the same purpose, but denied that he had any improper motive in doing so, or that he ever had any improper relations with them. The questions propounded

and the matter elicited by them did not have the effect of testing the memory of defendant nor of affecting his credibility as a witness, but of showing facts and circumstances from which it could be inferred that he had committed other crimes like the one for which he was on trial. We are therefore clearly of the opinion that the asking of the questions complained of and compelling the defendant to make answer thereto was prejudicial error. A defendant charged with a crime of this character committed on a child of tender years comes before the court under greater disadvantages than prisoners ordinarily do who are charged with other offenses. The fact that he is accused of so heinous an offense is sufficient to create in the minds of many a prejudice against him, if not a belief of his guilt. The situation of a man charged with this crime is well illustrated in 3 Greenl. Ev., sec. 212, wherein the author says: "It is to be remembered, as has been justly observed by Lord Hale, that it is an accusation easily made, hard to be proved, and still harder to be defended by one ever so innocent." See, also, 23 A. & E. Ency. Law (2d Ed.), 883, and cases there cited. While fondness for little children by an aged person is usually regarded as indicative of refinement and virtue rather than of a depraved nature, and especially in cases where such attachment is reciprocated by the children themselves, yet, let it be charged, or even suspected, that fondness for little girls by a man of mature years, and the attention paid them by him on a particular occasion, was prompted by a desire on his part to attract the little ones to him and gain their confidence in order to enable him to ravish and debauch them, public sentiment will suddenly be aroused against him, however groundless the charge or suspicion may be. Therefore great care should be exercised in a trial of this kind to prevent the accused from being convicted by the prejudice which a charge of this kind is apt to create against him and on the prejudice which naturally exists against the crime itself. The cross-examination of defendant on these matters, conducted as it was on the theory and in such a way as to carry with it the imputation

that he had committed numerous other crimes like the one for which he was on trial, considered by the jury in connection with and as corroborative of his alleged statement that he had been in the habit of ravishing and debauching other little girls, must have had a pronounced, if not a controlling, influence on the jury in their consideration of the case.

The defendant asked the court to instruct the jury that in determining the weight to be given the evidence of the prosecutrix they might take into consideration the fact that she "did not make complaint until nearly three years afterwards." The court refused to instruct the jury as requested, and failed to instruct at all upon this subject. We think this was error. The undoubted weight of authority is that where, as in this case, there has been great delay on the part of the prosecutrix in making complaint, the defendant is entitled to have this fact considered by the jury as bearing upon her credibility as a witness and the weight of her testimony, and especially where, as here, no reason for the delay is shown. In the case of *State v. Halford,* 17 Utah 475, 54 Pac. 819, this court held that "in all such cases it is desirable to know how soon, and in what way, the assaulted party complained. The fact of an early complaint is material as bearing upon the credibility of her testimony, and delay in making complaint, unless excused or accounted for, as by showing she was under the fear or control of her assailant will bear upon her credibility." In 10 Ency. Ev. 590, it is said: "The general rule is that lapse of time between the alleged outrage and the making of complaint does not render evidence of the complaint inadmissible, but merely affects its weight by tending to discredit the testimony of the prosecutrix." Many cases are cited in the footnote which illustrate and support this doctrine. (*State v. Neel,* 21 Utah 156, 60 Pac. 510; 3 Greenl. Ev., sec. 212; Underhill, Crim. Ev., sec. 411).

The judgment is reversed.

STRAUP, C. J., and FRICK, J., concur.