STATE of Utah, Plaintiff and Appellee,

v.

Cagie FEATHERSON, Jr., Defendant
and Appellant.

No. 880091.

Supreme Court of Utah.

Sept. 26, 1989.

Andrew A. Valdez, Joan C. Watt, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Charlene Barlow, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant Cagie Featherson, Jr., appeals from his convictions of aggravated sexual assault and aggravated burglary, both first degree felonies, in violation of Utah Code Ann. §§ 76–5–405 and 76–6–203 (1978, Supp.1989) respectively.

Defendant came uninvited to the victim's apartment three times during the evening of September 8 and the morning hours of September 9, 1987. She allowed him to enter the first time, believing him to be a friend with a load of groceries. The second time, he apparently entered her apartment through the sliding glass door on her balcony, and the third time, possibly through her apartment window, as indicated by a torn and removed screen. Upon each entry, she insisted he leave, which he did until the third and final entry, when she heard a big thump which came from the living room just moments after his second departure. According to the victim's testimony, she came into the living room to find defendant lying on his side on the floor. He stated that he wanted to talk and to smoke some marijuana together. She then walked over to the telephone, telling him he needed to leave or she was going to seek help. She dialed the operator, stating that she had a problem in her apartment and needed the police. Defendant grabbed her arm and told her she did not need the police. He hung up the phone, which rang a few seconds later. The emergency operator asked if she needed the police and she replied that she did, giving her address. She was unable to finish the conversation because defendant pulled the phone out of the wall. He warned her to be quiet; she asked him to leave, but he would not. He said he wanted to talk.

When she started to scream, he covered her mouth with his hand. Defendant testified that he was simply attempting "to calm her down." He grabbed her and pushed her down on the living room floor. In the struggle, her bra strap was ripped. She testified that defendant threw her onto the couch, climbed on top of her, and fondled her breasts. They were on the couch for about one minute when two police officers arrived and witnessed the scene. The officers pulled defendant off, and she ran into the bedroom. She suffered bruises, cuts, and scratches. Defendant had scratches on both of his arms and a few bruises.

The court returned verdicts of guilty to the charges of aggravated sexual assault and aggravated burglary. Defendant was sentenced to a minimum mandatory term

of ten years, and which may be for life, for the aggravated sexual assault and to a term of not less than five years, and which may be for life, for the aggravated burglary.

## I.

Defendant contends that the trial court erred in admitting evidence of prior bad acts or wrongdoings not related to the crimes charged and in allowing the State to question him as to the defense he interposed to prior charges which resulted in convictions. The State counters that such evidence and questioning was properly admitted and was allowed to show defendant's modus operandi, state of mind, or knowledge. Both defendant and the State rely on rule 404(b) of the Utah Rules of Evidence, which is the federal rule verbatim and provides:

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Specifically, defendant complains of the trial court's rulings in three instances. First, two women were allowed to testify about defendant's interactions with them several hours prior to the incident in the victim's apartment. Second, on cross-examination, the State was permitted to question defendant regarding his defense to three prior sexual assault offenses which had resulted in convictions, one for rape in 1979 and two for aggravated assaults in 1983. Third, the State questioned him about two prior uncharged assault incidents where officers had been summoned in 1977 and 1978. Defense counsel objected to the women's testimony and each line of questioning.

## A.

■ Evidence of other crimes, wrongs, or acts may be admitted if it has "a special relevance to a controverted issue and is introduced for a purpose other than to show the defendant's predisposition to criminality." *State v. Shickles*, 760 P.2d 291, 295 (Utah 1988) (citing *State v. Saunders*, 699 P.2d 738, 741 (Utah 1985)). In *State v. Shaffer*, 725 P.2d 1301, 1307 (Utah 1986), this Court stated:

[O]ther crimes or bad acts may be admitted "when relevant to prove some material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity." While evidence of other bad acts is inadmissible to show the general disposition of the defendant, such evidence, when relevant and competent, is admissible to prove a material fact. *State v. Tanner*, 675 P.2d 539, 546 (Utah 1983).

Such a fact must be material to the crime charged. We so held in *State v. Forsyth*, 641 P.2d 1172, 1176-77 (Utah 1982): "Evidence is not admitted merely because it shows a common plan, scheme, or manner of operation. Instead, evidence of a common plan, scheme, or manner of operation is admitted where it tends to prove some fact material to the crime charged." When evidence may establish constitutive elements of the crime of which the defendant is accused, in the case on trial, it is admissible even though it tends to prove that the defendant has committed other crimes. *See State v. Wareham*, 772 P.2d 960 (Utah 1989), and cases cited therein; *see also State v. Johnson*, 748 P.2d 1069, 1075 (Utah 1987) (evidence of other crimes was probative and necessary to prove identity of defendant); *State v. Smith*, 700 P.2d 1106, 1110 (Utah 1985) (in prosecution for rape, forcible sodomy, and burglary, the evidence of a prior criminal act to prove identity was admissible but subject to a limiting instruction).

■ The admissibility of prior bad act evidence is subject to the protections of the Utah Rules of Evidence, rule 403, i.e., the probative value of evidence of a material, controverted fact must outweigh its prejudicial effect. *State v. Shickles*, 760 P.2d at 295; *State v. Kerekes*, 622 P.2d 1161, 1165

(Utah 1980). Rule 403, which again is the federal rule verbatim, provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*See also* M. Graham, *Handbook of Federal Evidence*, § 404.5, at 215 (2d ed. 1986). In *State v. Bell*, 770 P.2d 100, 111 (Utah 1988), this Court cautioned the trial court on remand to admit the evidence of other crimes only after it had conducted a careful weighing of the probative value and potential prejudicial effect of the evidence pursuant to Utah Rules of Evidence 403. Evidence that goes to general disposition or is unfairly prejudicial is not admissible. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

We will now consider separately the three rulings of the trial court which defendant assails.

### B.

■ At the beginning of the trial, the prosecutor called two women to testify that defendant had made nonconsensual sexual advances toward them seven or eight hours before the incident with which he was charged. One woman testified that defendant looked at her chest and reached down and lifted her skirt. He then raised his eyebrows and smiled. He also whistled and looked intensely at her as she walked by the pool in their apartment complex. During the time he was visiting with the two women, defendant admitted that he was "high." The second woman testified that defendant was "looking at me, licking his lips. [He was] looking me up and down, looking around behind me at my backside." She testified that he followed her inside the rental office and into the manager's office, "just looking at me and just talking." This episode lasted approximately forty-five minutes without further incident. Defense counsel objected to the testimony of both women on the ground that their testimony was irrelevant, inflammatory, and prejudicial and concerned uncharged misconduct. After the prosecution stated that the observations of these women at that time were relevant evidence of defendant's state of mind at the time he committed the charged offense, the trial court overruled his objection.

The trial court erred in admitting the testimony of the two women because such testimony was not probative or relevant. With regard to similar uncharged misconduct, the Washington Court of Appeals held evidence inadmissible that the defendant, who managed the apartment building, tried to kiss a tenant of the apartment building shortly after the victim was raped. In *State v. Whyde*, 30 Wash.App. 162, 168, 632 P.2d 913, 917 (1981), the court held:

Evidence of specific instances of a person's conduct is generally not admissible to prove the character of a person in order to show that he acted in conformity with that character trait on a particular occasion. ER 404(b). There is no connection between Whyde's attempt to kiss Ms. H after the incident with S, and whether he raped S.

On the other hand, in *State v. Shickles*, 760 P.2d 291 (Utah 1988), this Court held that prior crime evidence was admissible because it was relevant to intent. There, evidence of the defendant's illicit conduct with the kidnapped minor, M., was directly probative of the proposition that the defendant took M. to Denver with the requisite intent and without a good faith belief that he had implied permission from M.'s parents to take her. *State v. Shickles*, 760 P.2d at 296. Thus, evidence of sexual misconduct against M. during the Denver trip was relevant of his intent to kidnap her. Nevertheless, we held that the defendant was entitled to a clear instruction to the jury strictly limiting the use it could make of the evidence. *Id.* at 296. In the instant case, there is no connection between defendant's earlier lustful conduct toward the two women and the subsequent sexual assault of the victim. His prior misconduct was not probative of his intent at the time of the assault, seven or eight hours after his interaction with the two women. In

*State v. Golladay,* 78 Wash.2d 121, 142, 470 P.2d 191, 204 (1970), *overruled on other grounds, State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (1976), the court noted that in prior cases, it had admitted evidence of collateral sexual misconduct of a defendant toward the victim. But the court refused to extend that exception to an instance where the defendant manifested a lustful disposition that was in no way connected with or directed toward the victim. *See* Annotation, *Admissibility, in Prosecution for Sexual Offense, of Evidence of Other Similar Offenses,* 77 A.L.R.2d 841 (1961).

■ Additionally, even if the testimony were probative of intent, the minimal probative value of such testimony was far outweighed by its prejudicial effect. In *State v. Urlacher,* 42 Or.App. 141, 600 P.2d 445, 446 (1979), the court held that it was proper to exclude testimony of two women other than the alleged victim, toward whom the defendant had made aggressive sexual advances during the twelve hours preceding the alleged rape. The court held, "Whatever minimal probative value may inhere in the testimony of the two women whom defendant assaulted is outweighed by its tendency to prejudice the jury against defendant or to direct the jury's consideration from the act charged."

C.

■ On direct examination by his counsel, defendant admitted to three prior convictions, a rape conviction in 1979 and two convictions for aggravated assault in February and March of 1983. The trial court then allowed the prosecutor to question him on cross-examination regarding a common defense he had interposed at the trials of those charges. Defendant admitted he had asserted that the women had "overreacted" to him, much the same as he claimed the victim in the instant case had done. The State relies on *State v. Lopez,* 626 P.2d 483, 485 (Utah 1981), to justify its probe into this common defense employed by defendant. In that case, we found no error in the admission of testimony by the State on rebuttal that the defendant had

engaged in an earlier fight in which he had kicked his opponent in the head, the same as he was charged with doing to the victim of the charged crime. However, *Lopez* can be distinguished from the instant case in that "the prior fight with [an individual] was not unrelated to the instant crime, but was the direct cause of the argument which erupted into the altercation in which the defendant inflicted the injuries upon [the victim] which caused his death." *State v. Lopez,* 626 P.2d at 485–86. Here, there is no such relationship between the prior convictions and the charges of aggravated sexual assault and aggravated burglary against defendant, despite the State's attempt to show that defendant's perception of the women's reactions to his sexual advances were all related. It was error to permit examination of his defense to the earlier charges.

The State relies on *State v. Forsyth,* 641 P.2d at 1177, to show that the prior convictions were admissible to prove a common plan or scheme, i.e., modus operandi:

[E]vidence of a common plan, scheme, or manner of operation is admitted where it tends to prove some fact material to the crime charged.... [E]vidence that a defendant had committed other crimes with *modus operandi similar to that of the charged offense* will be relevant and admissible ... to prove defendant's knowledge or criminal intent (or the absence of mistake or accident).

The prosecution relies on defendant's claim of the "overreaction" of his victims to represent just such a similarity. We hold that such "similarity" in a defense does not relate to the modus operandi. Furthermore, the "similarity" is common to many assault and rape cases and is not peculiarly distinctive of defendant's conduct. *See People v. Cook,* 53 Ill.App.3d 997, 998, 11 Ill.Dec. 792, 793, 369 N.E.2d 246, 247 (1977); *People v. Barbour,* 106 Ill.App.3d 993, 1000, 62 Ill.Dec. 641, 647, 436 N.E.2d 667, 673 (1982); *State v. Charles,* 502 So.2d 1095, 1097, (La.Ct.App.), *writ denied,* 505 So.2d 56 (La.1987).

In *State v. Sauter,* 125 Mont. 109, 232 P.2d 731, 732 (1951), the court held that on

a charge of forcible rape in an automobile after picking up the victim in a barroom, other rapes following similar pickups were "too common ... to have much evidentiary value in showing a systematic scheme or plan." Similarly, in *State v. Hansen*, 187 Mont. 91, 608 P.2d 1083, 1086 (1980), *appeal after remand*, 633 P.2d 1202 (1981), the court held that evidence of the defendant's prior act of rape, which had occurred two and one half years earlier, had no distinctive features making it similar to the rape for which the defendant was being prosecuted to be admissible under the exception to the other crimes admission rule. The court held:

> Numerous rapes follow the pattern of barroom pickup, voluntary entry into the offender's vehicle by the victim, driving to a remote area, advances, resistance and forcible intercourse. The sequence of events has no distinctive qualities that distinguish the acts from other rapes thus bringing the events within the purview of the similarity element of the other crimes admission rule exception.

*State v. Hansen*, 608 P.2d at 1086.

Moreover, the Washington Court of Appeals held that evidence of two rapes was not part of a common scheme or plan where the only similarity was that "both victims voluntarily entered vehicles with the defendants and in both instances the defendants drove the victims against their will to a location where the rapes occurred." *State v. Harris*, 36 Wash.App. 746, 751, 677 P.2d 202, 205 (1984). In its effort to justify admission, "the State has fallen into the common error of equating acts and circumstances which are merely similar in nature with the more narrow common scheme or plan." *Id.* at 751, 677 P.2d at 205. The court concluded, "[I]t is obvious the two rapes here do not qualify as links in a chain forming a common design, scheme or plan. At most they show only a propensity, proclivity, predisposition or inclination to commit rape. Such evidence is explicitly prohibited in ER 404(b)." *Id.* at 751, 677 P.2d at 205. Similarly, in the instant case, the victim's response to defendant's sexual assault and his interpretation of her reaction were not distinctive of defendant's modus operandi in committing the crime, i.e., pattern of behavior, and were thus inadmissible.

### D.

■ Defendant next contends that the court erred in admitting evidence of two prior incidents which did not result in convictions in 1977 and 1978 wherein women claimed that he had assaulted them. It is unclear whether defendant was actually charged for these incidents. The State contends that this evidence again shows modus operandi, state of mind, and knowledge. We hold that it was error to admit such evidence for the reasons stated in parts B and C above.

Furthermore, the Supreme Court of California held that in a prosecution for kidnapping, rape, and forcible oral copulation, evidence of the defendant's *uncharged* sex offenses against two other victims was inadmissible. In *People v. Tassell*, 36 Cal.3d 77, 88–89, 679 P.2d 1, 7–8, 201 Cal.Rptr. 567, 573–74 (1984), the court held that it was immaterial whether the modus operandi of the charged crime was similar to that of uncharged offenses:

> As noted at the outset, this case presented no issue of identity. No rational argument would support a contention that the three sets of sex crimes were part of one larger plan. There being no issue of identity, it is immaterial whether the modus operandi of the charged crime was similar to that of the uncharged offenses. While the People rely on the "common plan or scheme" rationale for admissibility, under the circumstances that is merely a euphemism for "disposition."

(Footnotes omitted.) Similarly, since identity was not an issue in this case and the apparently uncharged misconduct in 1977 and 1978 (nine and ten years ago) cannot be viewed, along with the instant charges, to be part of one large plan, it was error to admit the uncharged incidents.

### E.

■ An additional reason why it was error to admit evidence of the prior convic-

tions and prior incidents is that they were too remote. The prior rape conviction in 1979 and the incidents in 1977 and 1978 occurred nine or more years prior to the trial. The two convictions of aggravated assault in 1983 were likewise too remote to demonstrate any common scheme or pattern. Remoteness refers to the time between the prior crime and the offense for which the accused is on trial, but the test for remoteness is not a mechanical application. The relevant inquiry is whether the other acts have "clearly probative value with respect to the intent of the accused *at the time of the offense charged.*" *United States v. Scott*, 701 F.2d 1340, 1345–46 (11th Cir.), *reh'g denied*, 707 F.2d 523 (11th Cir.), *cert. denied*, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 158 (1983).

The Tenth Circuit Court has developed rigorous criteria for the admission of other crimes, wrongs, or acts pursuant to rule 404(b). The evidence, among other criteria, "must be reasonably close in time to the crime charged." *United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir.1988); *see also United States v. Mothershed*, 859 F.2d 585, 589–90 (8th Cir.1988) (defendant's conviction about ten years previously of knowing possession of stolen bank funds was not relevant to show intent or motive in prosecution for aiding and abetting bank robbery and thus was inadmissible).

In *State v. Winget*, 6 Utah 2d 243, 246, 310 P.2d 738, 739 (1957) (Wade, J., concurring specially), this Court held that the evidence of other similar sexual acts with persons other than the complaining witness was inadmissible. This Court rejected the argument that the other offenses were admissible as showing a common plan or scheme and reversed the conviction. In the prosecution for rape of the defendant's eight-year-old daughter, testimony by the defendant's 17–year–old stepdaughter was inadmissible that the defendant had raped her on four different occasions between the ages of eight and twelve. In Justice Wade's concurring opinion, he stated:

Usually evidence which shows plan, design or system is admissible to show one link in a chain of events which constitutes or at least indicates the commission of the crime charged. It is not apparent to me how this evidence fits in such a pattern. Evidence that a lustful man raped his stepdaughter *several years ago* tends to show his moral degenerated character and disposition to rape his own daughter, but does not seem to show that the two different offenses were a part of a general plan, design or system.

*Id.* at 246, 310 P.2d at 740 (emphasis added).

Justice Wade added that although identity or criminal intent could be shown by the fact that the same pattern was followed in the commission of the two offenses, such evidence was unnecessary because there was not any serious doubt or question of those issues. *State v. Winget*, 6 Utah 2d at 246, 310 P.2d at 740; *see also State v. Williams*, 103 P. 250, 252–53 (Utah 1909) (in rape prosecution, it was reversible error for the state to cross-examine the defendant and to compel him to answer questions over objection to suggest he had permitted other little girls to call at his home for the past five or six years so that he could rape them).

In *State v. Hansen*, 608 P.2d at 1087, the Montana Supreme Court held that because the conviction for sexual assault had occurred at least two and one half years prior to the alleged rape, the acts were too remote to fall within the exception to the rule that evidence of other crimes is not admissible. The court explained the remoteness concept:

The crimes here are separated by two years, six months and one week. Although a three year interval between a prior act and the charged crime is close to the limit of being too remote, other acts occurring three years prior to the crime have been held admissible when the acts engaged in by the defendant constitutes [sic] a continuing course of conduct. Factors that affect the determination of whether a prior act is too remote includes [sic] the number of incidents that have occurred, the nature of the incidents and the proximity of the last act to the date of the occurrence of

the conduct at issue. *State v. Minns* (1969), 80 N.M. 269, 454 P.2d 355, 358. (Citations omitted.)

Additionally, the *uncharged* crime or act must also be close in time to the crime charged. *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986) (citing *United States v. Nolan,* 551 F.2d 266, 272 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977)). Thus, the prior rape and aggravated assault convictions and the incidents of 1977 and 1978 should not have been admitted.

Finally, "[w]e are cognizant of the rule that the appraisal of the probative and prejudicial value of evidence under rule 403 is generally entrusted to the sound discretion of the trial judge and will not be upset on appeal absent manifest error." *State v. Maurer,* 770 P.2d 981, 983 (Utah 1989) (citing *State v. Miller,* 709 P.2d 350, 353 (Utah 1985)). Any relevance which could be found in the evidence was substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury...." Utah R.Evid. 403; Utah R.Civ.P. 52(a) (applicable to criminal cases as provided in Utah Code Ann. § 77–35–26(7) (Supp.1989); *see State v. Walker,* 743 P.2d 191 (Utah 1987)). We have provided guidance that "the State is bound ... to use an alternative mode of proof, or to forego the introduction of material if the evidence it offers cannot satisfy rule 403...." *State v. Bishop,* 753 P.2d 439, 475 (Utah 1988). The prosecutorial need for the admitted evidence was insignificant. There was sufficient evidentiary proof to show that all the elements of the charged crimes had been satisfied. Introduction of all prior misconduct and convictions was unnecessary.

## II.

■ In order to constitute reversible error, the error complained of must be sufficiently prejudicial that there is a reasonable likelihood of a more favorable result for the defendant in its absence. *State v. Tillman,* 750 P.2d 546, 561 (Utah 1987);

*State v. Miller,* 709 P.2d 350, 353 (Utah 1985); *State v. Knight,* 734 P.2d 913, 920 (Utah 1987), *quoted in State v. Gentry,* 747 P.2d 1032, 1038 (Utah 1987); *State v. Banner,* 717 P.2d 1325, 1335 (Utah 1986) (citing *State v. Fontana,* 680 P.2d 1042, 1048 (Utah 1984)); *see also* Utah R.Evid. 103(a); Utah R.Crim.P. 30(a). We are not persuaded that there is a reasonable likelihood of a more favorable result absent the admission of the prior bad acts evidence. The State presented evidence to prove the elements of aggravated sexual assault and aggravated burglary. As noted below, police officers witnessed the assault. In support of the notion that the judge in a bench trial, as in this case, acting as a trier of fact, is presumably less likely than a jury to be prejudiced by evidence of prior crimes, wrongs, or acts, this Court commented on the ability of a judge to distinguish evidence in *State v. Park,* 17 Utah 2d 90, 93–94, 404 P.2d 677, 679 (Utah 1965):

> In regard to errors assigned in rulings on evidence, we think it is sufficient to say that they do not merit detailed discussion. In that connection it is appropriate to observe that because it can be safely assumed that the trial court will be somewhat more discriminating in appraising both the competency and the effect properly to be given evidence, the rulings on evidence are looked upon with a greater degree of indulgence when the trial is to the court than when it is to the jury.

Thus, although the admission was error, it was harmless error and not grounds for reversal. *See State v. Malmrose,* 649 P.2d 56, 59 (Utah 1982); *State v. Scandrett,* 24 Utah 2d 202, 208, 468 P.2d 639, 643 (1970).

## III.

■ Defendant lastly contends that the evidence was insufficient to prove the criminal intent required for convictions of aggravated sexual assault and aggravated burglary. When an appeal is taken from a bench trial and the defendant complains of insufficiency of the evidence, we apply the "clearly erroneous" standard, which requires that "if the findings (or the trial

court's verdict in a criminal case) are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made, the findings (or verdict) will be set aside." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *State v. Ashe*, 745 P.2d 1255, 1258 (Utah 1987). The findings will not be disturbed unless they are clearly erroneous. *Lemon v. Coates*, 735 P.2d 58, 60 (Utah 1987). This Court must give due regard to the opportunity of the "trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). Rule 52(a) applies in criminal cases by virtue of Utah Code Ann. § 77–35–26(7) (Supp.1989).

 Because there is substantial evidence that the victim suffered physical injury after defendant entered or remained unlawfully in her apartment with the intent to commit a felony or an assault, Utah Code Ann. § 76–6–203(1) (1978, Supp.1989), the fact finder was not "clearly erroneous" in convicting defendant of aggravated burglary. It was reasonable to find that defendant had the purpose upon illegal entry to commit an assault if necessary in order to engage in sexual activity with the victim. This intent was made manifest when he continued to remain unlawfully on the premises and subsequently wrestled with her, choked her, threw her to the floor, threw her on the couch, and fondled her breasts. Further, the finding that defendant committed aggravated sexual assault pursuant to Utah Code Ann. § 76–5–405(1) (1978, Supp.1989) is well supported by the evidence. The police officers' testimony concur with the victim's that defendant was lying on the victim, fondling her and struggling with her. His conduct caused her bodily injury. Therefore, the finding is not clearly erroneous, and we will not disturb it on appeal.

Affirmed.

HALL, C.J., DURHAM and ZIMMERMAN, JJ., and PAMELA T. GREENWOOD, Court of Appeals Judge, concur.

STEWART, J., does not participate herein; GREENWOOD, Court of Appeals Judge, sat.