2002 UT App 219

**STATE of Utah, Plaintiff and Appellee,**

v.

**Damon and Misty COMER, Defendant and Appellant.**

**No. 20010323–CA.**

Court of Appeals of Utah.

June 27, 2002.

Dale M. Dorius and Justin C. Bond, Brigham City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before JACKSON, P.J., and BILLINGS, Associate P.J., and ORME, J.

## OPINION

ORME, Judge:

¶ 1 This appeal addresses, inter alia, the issue of whether a report of domestic violence from an identified citizen informant triggers the emergency aid exception to the Fourth Amendment's warrant requirement, permitting warrantless entry into a home even absent probable cause. We conclude it does not. However, we determine that the warrantless police entry into the residence in this case was nonetheless lawful because it was supported by probable cause and accompanied by exigent circumstances.

## BACKGROUND

¶ 2 "We recite the facts in the 'light most favorable to the trial court's findings from the suppression hearing'" held in this case. *State v. Giron,* 943 P.2d 1114, 1115 (Utah Ct.App.1997) (citation omitted). On July 5, 2000, three Brigham City police officers responded to a dispatch call based on a report from an identified citizen informant of a "family fight in progress" at Appellants' residence. Once all three officers arrived, they knocked on the door of the residence. Appellant Misty Comer answered the door, first opening it only a few inches, and then stepping out onto the porch. The officers explained to Misty that they were there to investigate a reported family fight and asked if anyone else was inside the home. Misty stated that her husband was inside and then, without explanation "immediately turned and walked back inside the residence."

¶ 3 The officers followed Misty into the home and down the hallway to a bedroom. Misty stuck her head inside the bedroom door and told her husband that the police were there. Appellant Damon Comer then emerged from the bedroom, and the officers followed the Comers back to the front room, where the Comers acknowledged they had been in an argument. Misty admitted that she had scratched Damon, and the officers observed that Damon had scratch marks on his chest, neck, and back.

¶ 4 The officers arrested Misty for domestic violence assault and, in the course of making that arrest, found drugs and drug paraphernalia. Damon and Misty were each charged with possession of a controlled substance in a drug-free zone, a second degree felony, in violation of Utah Code Ann. § 58-37-8 (Supp.2000), and with possession of drug paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58-37a-5 (1998). After a preliminary hearing, they

were each bound over on both of the counts charged.

¶ 5 The Comers then filed a motion to suppress, and the trial court held a hearing on the motion. The hearing included testimony from two of the officers and argument from both sides. The trial court ultimately denied the Comers' motion to suppress, concluding that the officers' warrantless entry into the Comers' home fell under the emergency aid doctrine.[1] *See Salt Lake City v. Davidson,* 2000 UT App 12, ¶¶ 10–13, 994 P.2d 1283. The trial court stated:

> The court finds the following. There's no question that this involved a residence which creates a higher standard with regards to entry by the police without a warrant. In this case the defendants had a report of a domestic fight in progress. . . .
>
> By itself that wouldn't justify the officers entering the house because, as has been amply testified to, these reports run the whole range from simply having a verbal argument to severe violence. Often times they're nothing more than an argument.
>
> In this case the court finds that the requirements have been met for the following reason. The defendant, Misty Comer, according to the testimony, made a somewhat sudden and unexplained retreat into the house. In other words, without saying why. And during the middle of a conversation with the officers she heads back into the house. Under those circumstances it is reasonable that the officers followed her into the house. Now, had she stayed out on the porch you have an entirely different set of circumstances, but that's not what occurred here.
>
> So, the court finds that the motion to suppress is denied. The[ ] requirements

---

1. [A] warrantless search is lawful under the emergency aid doctrine if the following requirements are met:

   (1) Police have an objectively reasonable basis to believe that an emergency exists and believe there is an immediate need for their assistance for the protection of life.

   (2) The search is not primarily motivated by intent to arrest and seize evidence.

   (3) There is some reasonable basis to associate the emergency with the area or place to be searched. That is, there must be a connection with the area to be searched and the emergency.

   *Salt Lake City v. Davidson,* 2000 UT App 12, ¶ 12, 994 P.2d 1283.

have been met. The basis for the emergency was not only the call, but her behavior at that time and they followed her. There doesn't appear to be any evidence that in following her they said, oh, let's follow her in, maybe we can find drugs. There's no suggestion of that. There does seem to be a reasonable basis that the emergency is associated with the area they searched. In other words, all they did was follow her in and stay on track with her. Sure enough, very shortly thereafter, an individual appears who appears to have been the victim of domestic violence. The indication was scratches on his neck and chest and back. At that point there's the basis for an arrest to occur. So the court denies the motion to suppress.[2]

¶ 6 During the suppression hearing, defense counsel attempted to impeach the credibility of one of the officers. The officer indicated on cross-examination that upon entering the Comers' home he briefly scanned the room to see if there were any weapons, overturned furniture, or holes in the walls. Defense counsel asked the trial court for permission to retrieve from his car the videotape of the preliminary hearing [3] and play it for the trial court to show that the same officer had testified at the preliminary hearing that upon entering the home he had not looked around the front room at all, but simply followed Misty down the hall. The trial court denied defense counsel's request, stating that the alleged difference between the officer's preliminary hearing testimony and his suppression hearing testimony

> may have some limited relevance on credibility. On the other hand, this is an incident in the early morning hours, about six or seven months ago. Whether a person went straight in following somebody or as they went in glanced sideways, in the court's view either one certainly could have occurred, but I'm not sure that's a critical issue. I don't think that shows that anybody is lying, if they did one or the other or did both.

¶ 7 Following the trial court's denial of the motion to suppress, Misty pleaded guilty to the felony charge, and, pursuant to a plea agreement, the State dismissed the misdemeanor charge against her. Also as part of the agreement, Misty reserved the right to appeal the court's ruling on the motion to suppress. Misty then timely appealed.

¶ 8 Damon entered into a plea in abeyance agreement on the felony charge, and the State dismissed the misdemeanor charge. His plea in abeyance agreement purported to provide, inter alia, that he also could appeal the trial court's ruling on the motion to suppress. Damon filed a notice of appeal the day after entering into the plea in abeyance agreement.

¶ 9 Damon's and Misty's appeals are each based on the trial court's refusal to view the videotape of the preliminary hearing and on the trial court's denial of their joint motion to suppress evidence. We have consolidated the two appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 We first address a jurisdictional issue raised by the State, namely, whether this court has jurisdiction over Damon's appeal. "Whether appellate jurisdiction exists is a question of law which we review for correctness, giving no deference to the decision below." *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572.

¶ 11 We next address the issue raised by the trial court's refusal to view portions of the video tape of the preliminary hearing, as requested by the Comers, for the purpose of impeaching the testimony of one of the officers. "A trial court has broad discretion to admit or exclude evidence and its determination typically will only be disturbed if it constitutes an abuse of discretion. A trial court abuses its discretion if it acts unreasonably." *State v. Whittle*, 1999 UT 96, ¶ 20, 989 P.2d 52 (internal citation omitted).

---

2. The trial court made no separate written findings following the hearing on the motion to suppress.

3. At oral argument before this court, the Comers' appointed counsel informed us that the trial court would not allow creation of a written transcript of the preliminary hearing at state expense.

¶ 12 Finally, we review the trial court's denial of the Comers' motion to suppress.

> We review the factual findings underlying the trial court's denial of defendant's motion to suppress under a clearly erroneous standard. *See State v. Anderson,* 910 P.2d 1229, 1232 (Utah 1996). We will determine there was clear error "only if the factual findings made by the trial court are not adequately supported by the record." *Id.* By contrast, we review "the trial court's conclusions of law based on such facts under a correctness standard, according no deference to the trial court's legal conclusions." *Id.*

*Salt Lake City v. Davidson,* 2000 UT App 12, ¶ 8, 994 P.2d 1283.

## JURISDICTION

¶ 13 Damon seeks to appeal from a plea in abeyance agreement. Under such an agreement, the court accepts a defendant's guilty plea but does not enter judgment or impose sentence, and all time periods imposed by applicable law regarding the time for entry of judgment and imposition of sentence are waived. *See* Utah Code Ann. §§ 77–2a–1, –2 (1999). Entry of judgment and imposition of sentence are postponed pending the defendant's successful completion of his obligations under the agreement. *See id.* Upon the defendant's successful completion of his obligations under the agreement, and depending on the terms of the agreement, the defendant is allowed to withdraw his plea and the charges are dismissed, or judgment is entered and a sentence imposed for a lower degree of offense. *See* Utah Code Ann. § 77–2a–3(2) (1999).

¶ 14 The law is well-settled that, because there has been no final judgment, a direct appeal cannot be taken from a plea in abeyance agreement. *See State v. Hunsak-*

*er,* 933 P.2d 415, 416 (Utah Ct.App.1997) (per curiam); *State v. Moss,* 921 P.2d 1021, 1025 n. 7 (Utah Ct.App.1996). "In criminal cases, the sentence itself is the final judgment from which an appeal can be taken," and "the plain language of [Utah Code Ann. § ] 77–2a–1 'reveals that a plea in abeyance is not a final adjudication.'" *Hunsaker,* 933 P.2d at 416 (quoting *Moss,* 921 P.2d at 1025 n. 7). "Because [Damon] has not been sentenced, [his] appeal was not taken from a final order, and this court lacks jurisdiction to consider the appeal."[4] *Id.* We therefore dismiss Damon's appeal, without prejudice to his appealing should judgment be entered and sentence imposed.[5] Because Misty appeals from a final appealable judgment, we have jurisdiction over her appeal.

## PRELIMINARY HEARING TESTIMONY

¶ 15 Misty argues that "[t]he [t]rial [c]ourt erred in not allowing [her] to use the video tape of the preliminary hearing to cross-examine the [o]fficers at the suppression hearing." Before declining to view the preliminary hearing testimony, the trial court heard defense counsel's proffer of what the preliminary hearing testimony would show. "'[B]ecause it can be safely assumed that the trial court will be somewhat more discriminating in appraising both the competency and the effect properly to be given evidence, the rulings on evidence are looked upon with a greater degree of indulgence when'" the court itself is the finder of fact rather than a jury. *State v. Featherson,* 781 P.2d 424, 431 (Utah 1989) (quoting *State v. Park,* 17 Utah 2d 90, 404 P.2d 677, 679 (1965)). "In a bench trial or other proceeding in which the judge serves as fact finder, the court has considerable discretion to assign relative weight to the evidence before it. This discretion includes the right to minimize or even disregard certain evidence." *State v.*

---

**4.** We note that because Damon's plea in abeyance agreement purports to preserve Damon's right to appeal, it appears Damon might have been erroneously led to believe he could appeal directly from his plea in abeyance agreement. However, Damon sustains no actual prejudice if he was misled, because the outcome of his appeal, were we able to reach it, would be precisely the same as Misty's.

**5.** Practically speaking, however, given the rule of horizontal stare decisis, *see State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994), and the identical facts of Misty's and Damon's cases, this opinion will be dispositive of any later appeal by Damon raising the same issues.

*Hodges,* 798 P.2d 270, 274 (Utah Ct.App. 1990). Accordingly, we see no abuse of discretion in the trial court's determination to exclude the videotape, after having heard a proffer of the evidence defense counsel wished to present, given the court's conclusion that the evidence would have no bearing on its determination of the credibility of the officers.[6]

## MOTION TO SUPPRESS

¶ 16 We now address Misty's challenge to the trial court's denial of her motion to suppress. The trial court denied Misty's motion to suppress, holding that the officers' warrantless entry into the Comers' home was justified under the emergency aid, or medical emergency, exception to the warrant requirement of the Fourth Amendment. *See Salt Lake City v. Davidson,* 2000 UT App 12, ¶¶ 10–15, 994 P.2d 1283 (adopting and explaining the emergency aid doctrine).

### Emergency Aid Doctrine

¶ 17 This court has observed that application of the emergency aid doctrine "should be ' "strictly circumscribed." ' " *Id.* at ¶ 15, 994 P.2d 1283 (quoting *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) (quoting *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968))). This is because of the significant departure the emergency aid doctrine takes from Fourth Amendment juris-

prudence by requiring neither a warrant nor probable cause as prerequisites to a search.[7] *See id.*

¶ 18 Accordingly, the first prong of the test for application of the emergency aid doctrine is that " '[p]olice [must] have an objectively reasonable basis to believe that an emergency exists and believe there is an immediate need for their assistance for the protection of life.' " *Id.* at ¶ 12, 994 P.2d 1283 (citation omitted). In *Davidson,* immediately prior to adopting the three-prong test for application of the emergency aid doctrine, we explained:

> The medical emergency exception will support a warrantless search of a person or personal effects when [a] person is found in an unconscious or semiconscious condition and the purpose of the search is to discover evidence of identification and other information that might enhance the prospect of administering appropriate medical assistance, and the rationale is that the need to protect life or avoid serious injury to another is paramount to the rights of privacy....

[Tracy A. Bateman, Annotation, *Lawfulness of Search of Person or Personal Effects under Medical Emergency Exception to Warrant Requirement,* 11 A.L.R. 5th 52, § 2[a] (1993) ]. Several courts have also applied the emergency aid doctrine when a person is missing and feared to be injured or dead. *See, e.g., People v. Mitchell,* 39

---

**6.** Even defense counsel acknowledges that the trial court's decision not to view the videotape is "not a major point in the present appeal." Nonetheless, it became clear at oral argument that counsel's primary concern was with the trial court's routine refusal to allow, in the case of an indigent defendant, the creation of a transcript of the preliminary hearing at state expense. We share defense counsel's concern.

A criminal defendant has the "right to conduct a meaningful cross-examination," *State v. Volberding,* 30 Utah 2d 257, 516 P.2d 359, 360 (1973), which not uncommonly entails impeachment through use of a witness's prior inconsistent testimony. To require indigent defendants to prepare for cross-examination by reviewing the recordings of prior proceedings and taking detailed notes of the witnesses' prior testimony seems an undue burden on appointed counsel. And if the witness refuses to acknowledge the apparent discrepancy between his prior and present testimony, recessing to locate a television

and videotape machine, set up the equipment, and cue the tape to the relevant testimony, seems rather impractical. Thus, we believe the better practice is for trial courts to allow preparation of transcripts of prior proceedings at state expense when a proper request has been made by appointed counsel.

**7.** We believe there is a distinction between the usually understood definition of probable cause and the "reasonable basis" referred to in the third prong of the emergency aid doctrine. [*See* Note 1 in the instant opinion.] "In general, '[p]robable cause means a "fair probability that contraband or evidence of a crime will be found." ' " The third prong of the emergency aid doctrine, on the other hand, "asks whether there was some reasonable basis to associate the place searched with the emergency." *Salt Lake City v. Davidson,* 2000 UT App 12, ¶ 15, 994 P.2d 1283 (citations omitted).

N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (1976).

*Davidson,* 2000 UT App 12 at ¶ 10, 994 P.2d 1283.

¶ 19 Properly circumscribed, the emergency aid doctrine does not apply to the facts of this case because the information available to the police was insufficient to support an objectively reasonable belief that an unconscious, semi-conscious, or missing person feared injured or dead might be in the Comers' home. On the contrary, the only information the officers had was a report of a family fight in progress, Misty's indication her husband was home, and Misty's "somewhat sudden and unexplained retreat into the house."

¶ 20 We decline to adopt a rule whereby a reliable domestic disturbance report, by itself, would be viewed as supporting an objectively reasonable belief that a person has been seriously injured. Rather, we conclude there must be some reliable and specific indication of the probability that a person is suffering from a serious physical injury before application of the medical emergency doctrine is justified. Here, even in light of the "family fight in progress" report, Misty's actions, although suspicious, did not reasonably suggest an immediate medical emergency of the degree necessary to trigger the emergency aid doctrine. Thus, the trial court misapplied the emergency aid doctrine in this case.

### Probable Cause

¶ 21 We nonetheless conclude the officers' entry into the Comers' home was lawful because it was supported by probable cause and exigent circumstances.[8] *See State*

*v. Yoder,* 935 P.2d 534, 540 (Utah Ct.App. 1997). With few exceptions,[9] probable cause is the primary prerequisite to any police search of a residence. "Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed." *State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)). The facts and circumstances known to the officers in this case establish probable cause.

¶ 22 The officers received a report from an identified citizen informant of a "family fight in progress" at the Comers' residence. As we have noted in analogous contexts, " '[n]ot all tips are of equal value in establishing reasonable suspicion[,]' . . . [but] an identified 'citizen informant' is high on the reliability scale." *Kaysville City v. Mulcahy,* 943 P.2d 231, 235 (Utah Ct.App.) (citation omitted), *cert. denied,* 953 P.2d 449 (1997). "The ordinary citizen-informant needs no 'independent proof of reliability or veracity.' " *Id.* (quoting *State v. Brown,* 798 P.2d 284, 286 (Utah Ct.App.1990)). "We simply assume veracity when a citizen-informant provides information as a victim or witness of crime." *Id.*

¶ 23 Furthermore, when the officers arrived at the Comers' residence and told Misty of the report they had received and asked if anyone else was home, rather than provide any information that might dispel the suspicions raised by the report, Misty simply

---

8. "It is well settled that we may affirm a judgment of a lower court if it is sustainable on any legal ground or theory apparent on the record." *State v. Finlayson,* 2000 UT 10, ¶ 31, 994 P.2d 1243.

Because the trial court did not conduct a probable cause and exigent circumstances analysis, it made no specific findings that probable cause and exigent circumstances existed to justify the officers' warrantless entry into the Comers' home. (It did, however, find that Misty's retreat back into the home was both sudden and unexplained.) "Normally, when factual issues are involved in deciding a motion to suppress, trial

courts are required to make detailed findings sufficient to enable appellate courts to adequately review the trial court's decision. However, in the instant case, the facts relevant to [probable cause and] exigent circumstances are not in dispute. As such, we need not remand for entry of factual findings." *City of Orem v. Henrie,* 868 P.2d 1384, 1388 n. 7 (Utah Ct.App.1994) (internal citation omitted).

9. *See, e.g., Davidson,* 2000 UT App 12 at ¶¶ 12–15, 994 P.2d 1283 (emergency aid doctrine); *State v. Velasquez,* 672 P.2d 1254 (Utah 1983) (parole officer searches of parolees' residences).

stated that her husband was home and then retreated inside. Even if one could possibly conceive of a scenario in which such an abrupt withdrawal in the middle of an encounter with police may not appear highly suspicious, "[s]eemingly innocent conduct may become suspicious in light of the initial tip[, and a]n officer's experience may also be considered in determining probable cause." *Hopkins v. City of Sierra Vista*, 931 F.2d 524, 528 (9th Cir.1991) (internal citation omitted). *See State v. Dorsey*, 731 P.2d 1085, 1088 (Utah 1986) ("Police officers by virtue of their experience and training can sometimes recognize illegal activity where ordinary citizens would not. Some recognition should appropriately be given to that experience and training where there are objective facts to justify the ultimate conclusion."). One of the officers testified: "I[t] appeared to me that she may have been trying to—I don't know, either conceal or just prevent us from seeing inside the residence."[10] Accordingly, we conclude that the reliable tip by an identified citizen informant of a family fight in progress, accompanied by Misty's unexplained retreat into the home in which she acknowledged her husband was present, establish probable cause to believe that one of the legislatively defined domestic violence crimes, *see* Utah Code Ann. § 77–36–1 (1999), had been or was being committed inside the home.

### Exigent Circumstances

¶ 24 "[P]robable cause alone is never enough to search . . . and seize . . . without a warrant. If it were, the protection of the Fourth Amendment would be rendered a nullity and probable cause alone would make all warrantless searches per se reasonable." *State v. Harris*, 671 P.2d 175,

179 (Utah 1983). However, "[a] warrantless search of a residence is constitutionally permissible where probable cause and exigent circumstances are proven." *State v. Yoder*, 935 P.2d 534, 540 (Utah Ct.App.1997). "Exigent circumstances are those ' "that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." ' " *Id.* at 540 n. 2 (quoting *State v. Beavers*, 859 P.2d 9, 18 (Utah Ct.App.1993) (quoting *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984))). Additionally, exigent circumstances "analysis requires an objective determination; that is, '[w]hile "exigent circumstances" have multiple characteristics, the guiding principle is reasonableness, and each case must be examined in the light of facts known to officers at the time they acted.' " *City of Orem v. Henrie*, 868 P.2d 1384, 1391 (Utah Ct.App.1994) (quoting *State v. Hert*, 220 Neb. 447, 370 N.W.2d 166, 170 (1985)). *See State v. Aragon*, 123 N.M. 803, 945 P.2d 1021, 1024 (Ct.App.1997).

¶ 25 While this is admittedly a close case, we conclude that the facts known to the officers at the time they entered the Comers' residence establish exigent circumstances. We have concluded that the officers had probable cause to believe a domestic violence offense had been, or was being, committed in the Comers' home, and we have previously acknowledged that "a domestic violence complaint" is "one of the most potentially dangerous, volatile arrest situations confronting

---

10. Misty's behavior should not be viewed in a vacuum, but rather against the background of how one would expect an innocent person to behave under all the circumstances. Misty was greeted at the door by three uniformed police officers who informed her they had received a report of a "family fight in progress" at her home and asked if anyone else was in the home. An ordinary person engaged only in lawful activity would not, under those circumstances, simply state her husband was in the home and then suddenly retreat inside without explanation. Rather, one would expect a response akin to any

of the following, should the person choose to speak: "My husband and I did get into a spat earlier, but all we did was argue, and we're both fine. Would you like to wait here while I go get him?"; "Did that pesky neighbor of ours call in again? We can't even barbecue in the backyard without her reporting us for something."; or, "Yes, officers, our son and his girlfriend got into a fight here earlier, but they made up and left in her car not long before you arrived." In contrast, Misty's curious behavior tends to confirm, rather than dispel, suspicion.

police." *State v. Richards*, 779 P.2d 689, 691 (Utah Ct.App.1989).

¶ 26 In light of the officers' reasonable belief that a domestic violence offense had been, or was being, committed, and the "combustible nature of domestic disputes," *Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998), Misty's "somewhat sudden and unexplained retreat into the house" could reasonably have indicated to the officers that any of a number of scenarios might be about to occur, each of which would cause an officer to reasonably believe there was no time to get a warrant and/or that his presence was necessary to prevent physical harm to persons or the destruction of evidence. Namely, the officers could reasonably have feared that Misty retreated into the home (1) because of an immediately prior threat against her by her husband; (2) to immediately resume the altercation reported by the citizen informant; or (3) to cover up evidence of already-perpetrated domestic violence. We therefore conclude that exigent circumstances existed, justifying the officers' warrantless entry into the Comers' home.

¶ 27 Because we conclude the officers' entry into the Comers' home was supported by probable cause and exigent circumstances, there was no error in the trial court's denial of Misty's motion to suppress.[11]

## CONCLUSION

¶ 28 Although, as a practical matter, the result of his appeal would be the same as Misty's if we reached the merits, we lack jurisdiction to consider Damon's appeal. The trial court did not abuse its discretion in failing to view the videotape of preliminary hearing testimony. Finally, the officers' warrantless entry into the Comers' home, while not justified under the emergency aid doctrine, was lawful because it was supported by probable cause and accompanied by exigent circumstances.

¶ 29 Affirmed.

¶ 30 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JUDITH M. BILLINGS, Associate Presiding Judge.

11. We note that at least Washington and Arizona have adopted approaches different than the one we follow here for analyzing warrantless police entry into a private residence after receipt of a report of domestic violence at that residence. Washington allows a corroborated anonymous report of a domestic dispute to trigger the emergency aid doctrine and allow warrantless entry without a showing of probable cause, *see State v. Menz*, 75 Wash.App. 351, 880 P.2d 48, 49–50 (1994), an approach we reject above. Arizona, on the other hand, appears to hold that a report of domestic violence alone amounts, per se, to exigent circumstances, and that the "exigency ... allow[s][an] officer to enter a dwelling if no circumstance indicates that entry is unnecessary." *State v. Greene*, 162 Ariz. 431, 784 P.2d 257, 259 (1989). This approach omits an express analysis of probable cause, or at least seems to collapse the probable cause and exigent circumstances determinations into one.

As exemplified by this case, we believe police who have probable cause to believe domestic violence is in process or has just occurred can effectively address the volatility of domestic disputes through the existing exigent circumstances exception to the warrant requirement. *See State v. Aragon*, 123 N.M. 803, 945 P.2d 1021, 1024–25 (Ct.App.1997). Additionally, although not directly applicable in the instant case, we believe it is worth noting that an "officer's entry into [a home] could also be justified under an implied consent theory if it were clear that the call to the police was made by [the victim of domestic violence from his or her home] or [by] someone acting at [his or] her behest." *Greene*, 784 P.2d at 259 n. 1.