2005 UT App 65

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jose VALLASENOR–MEZA, Defendant and Appellant.**

No. 20030738–CA.

Court of Appeals of Utah.

Feb. 17, 2005.

---

124

Margaret P. Lindsay, Orem, and Richard P. Gale, Utah County Public Defenders Association, Provo, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before BENCH, Associate Presiding Judge, and DAVIS and GREENWOOD, JJ.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 Jose Vallasenor–Meza appeals his convictions of possession with intent to distribute a controlled substance in violation of Utah Code section 58–37–8(1)(a)(iii), and possession of drug paraphernalia in violation of Utah Code section 58–37a–5. *See* Utah Code Ann. §§ 58–37–8(1)(a)(iii), –37a–5 (2003). We affirm.

## BACKGROUND

¶ 2 On February 25, 2003, Clair Call (Mr. Call) received a phone call from his brother. The brother informed Mr. Call that their sister had left a message on the brother's answering machine stating that her live-in boyfriend, Vallasenor–Meza, was physically abusing her at their residence. The brother said the fight "sounded bad" and "violent" and that their sister was "yelling and screaming" on the recorded message. Mr. Call, under the impression the fight was still ongoing, thereupon phoned the police and told them that Vallasenor–Meza was "beating the crap out of [my sister]." Mr. Call was unaware that his sister had left the phone message several hours earlier, and had since gone to work. Unsure of his sister's exact

street address, Mr. Call agreed to meet Officer Parsons and Officer Garcia at a nearby location so he could lead them to the trailer home where she lived.

¶ 3 When the officers arrived at the residence, Vallasenor–Meza put his head out of the door. He admitted there had been a fight, but insisted that it had ended. Officer Parsons, wanting to confirm that the fight had ceased and that the woman was safe, asked "if it would be alright to come in and confirm the safety of both parties." Vallasenor–Meza declined, consistently keeping one arm behind the door and acting, according to the officers, "very guarded about what was behind the door." Concerned for the woman's safety and their own, the officers asked to see both of Vallasenor–Meza's hands. He steadfastly refused to show his hands, which prompted Officer Garcia to draw his weapon. Vallasenor–Meza thereupon stepped out of the doorway and showed both hands, but then kept placing them in his pockets. When he refused to answer any more questions, the officers searched Vallasenor–Meza for weapons and asked if anyone was in the trailer. He initially responded, "[Y]es." After being asked a second time, Vallasenor–Meza changed his response and stated that no one else was in the trailer. Officer Parsons "felt with the way [Vallasenor–Meza] was acting, [Mr. Call's sister] was possibly inside and injured and went to check on her welfare."

¶ 4 Officer Parsons walked through the trailer and concluded that no one else was inside. However, he observed a marijuana pipe in the bedroom and saw what appeared to be a large quantity of cocaine on the kitchen table. Based on those observations, the officers arrested Vallasenor–Meza and called for backup officers to process the scene. Sergeant Mallinson arrived and obtained consent from Vallasenor–Meza to search the premises. Vallasenor–Meza waived his rights, and admitted ownership of the observed drugs. A field test conducted at the scene revealed that the seized items were cocaine and marijuana.

¶ 5 Vallasenor–Meza filed a motion to suppress the seized evidence on the basis that the officers conducted an unlawful, warrantless search of the residence. After the suppression hearing, the trial court determined that probable cause and exigent circumstances allowed the officers to enter the premises without a warrant. Vallasenor–Meza subsequently pleaded guilty but preserved his right to appeal the trial court's denial of his motion to suppress.

ISSUES AND STANDARDS OF REVIEW

¶ 6 Vallasenor–Meza challenges the validity of the warrantless search of his residence. More specifically, he contends that the trial court erred in denying his motion to suppress because the warrantless search violated his rights protected under the Fourth Amendment. "We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard." *State v. Veteto*, 2000 UT 62, ¶ 8, 6 P.3d 1133 (citations and quotations omitted). For "the application of the law to the underlying factual findings in search and seizure cases," we apply the standard of "non-deferential review." *State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

ANALYSIS

I. The Trial Court's Factual Findings

¶ 7 Vallasenor–Meza asserts that the trial court's factual finding that he initially told the officers that the victim was inside the residence is clearly erroneous. He contends that part of Officer Parsons's testimony at the evidentiary hearing differs from the officer's statements at that same hearing as well as at the preliminary hearing. Regardless of the slight differences, such as asking if "anybody" was inside versus if "she" was inside, Officer Parsons stated at both hearings that Vallasenor–Meza gave contradictory answers.

¶ 8 Vallasenor–Meza argues that the trial court erred in its factual findings because the differences in Officer Parsons's testimony do "not stand up to scrutiny," casting doubt on whether probable cause and exigent circumstances actually existed. The trial court found that "[Vallasenor–Meza] gave a conflicting and suspicious answer" to the officers' questions. In this instance, the impor-

tance of the statements lies not in the details of the questions and answers, but in the contradictions coupled with Vallasenor–Meza's suspicious behavior. We conclude that the trial court's findings are not clearly erroneous.

## II. Probable Cause and Exigent Circumstances

¶ 9 Vallasenor–Meza argues that the warrantless search of his residence was not justified by probable cause and exigent circumstances. Under the Fourth Amendment, reasonable searches and seizures "may not be conducted without a warrant supported by probable cause." *State v. James,* 2000 UT 80, ¶ 9, 13 P.3d 576 (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). However, there are " 'a few specifically established and well-delineated exceptions' " that permit warrantless searches. *State v. Arroyo,* 796 P.2d 684, 687 (Utah 1990) (quoting *Katz,* 389 U.S. at 357, 88 S.Ct. 507). "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the [United States Supreme] Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur,* 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). One such exception is that of exigent circumstances. *See State v. Comer,* 2002 UT App 219, ¶ 24, 51 P.3d 55. " '[A] warrantless search of a residence is constitutionally permissible where probable cause and exigent circumstances are proven.' " *Id.* (quoting *State v. Yoder,* 935 P.2d 534, 540 (Utah Ct.App.1997)).

### A. Probable Cause

¶ 10 "Probable cause exists where the facts and circumstances within ... [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." *State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986) (second and third alterations in original) (citations and quotations omitted). "The determination ... depends upon an examination of all the information available to the searching officer in light of the circumstances as they existed at the time the search was made." *Id.* Such a determination of probable cause is based on the totality of the circumstances. *See Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

¶ 11 Vallasenor–Meza argues that the officers' search of his residence without a warrant was not supported by probable cause. He contends that the trial court erred in concluding that "Officer Parsons ... was informed of the crime by an identified citizen informant" whose "veracity and reliability may be assumed." Vallasenor–Meza refers to this court's decision in *Comer,* arguing that the trustworthiness of a citizen informant may only be assumed "when a citizen-informant provides information as a victim or a witness of a crime." *Comer,* 2002 UT App 219 at ¶ 22, 51 P.3d 55 (citation and quotations omitted).

¶ 12 In *Comer,* a neighbor called the police and reported a "family fight in progress." *Id.* In this case, Mr. Call's brother told him about a voice message from their sister where she reported a fight, which Mr. Call believed to be in progress. Vallasenor–Meza maintains that this case is unlike *Comer* because Mr. Call "was not either a victim or a witness" and "had no further personal knowledge that a crime had even occurred." Vallasenor–Meza, however, ignores the fact that *Comer* provides no details as to how the neighbor knew a family fight was in progress. *See id.* Mr. Call may still be considered a witness even though he did not personally hear or see the fight in progress. Mr. Call recounted to the officers the phone conversation with his brother, which led him to believe his sister's boyfriend was presently abusing her.

¶ 13 "An ordinary citizen-informant needs no independent proof of reliability or veracity." *State v. Deluna,* 2001 UT App 401, ¶ 14, 40 P.3d 1136 (citations and quotations omitted). Mr. Call is clearly not a police informant. He engaged in no criminal activity, had no motivation of pecuniary gain, and had no intention of remaining anonymous. *See State v. McArthur,* 2000 UT App 23, 31, 996 P.2d 555. In fact, he met the

police and directed them to his sister's residence.

¶ 14 Furthermore, upon arriving at the residence, Vallasenor–Meza confirmed that there had been a fight at the home. With this confirmation, the officers could reasonably believe Mr. Call's claim of a domestic fight involving his sister. The reliable report of possible abuse, along with Vallasenor–Meza's suspicious body movements, contradictory answers, and unwillingness to cooperate, establishes the requisite probable cause to believe that an offense had been or was being committed. *See State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986).

## B. Exigent Circumstances

¶ 15 "[E]xigent circumstances analysis requires an objective determination." *State v. Comer,* 2002 UT App 219, ¶ 24, 51 P.3d 55 (citations and quotations omitted). "[T]he guiding principle is reasonableness, and each case must be examined in the light of facts known to officers at the time they acted." *Id.* (citations and quotations omitted).

¶ 16 Before the officers arrived at Vallasenor–Meza's residence, Mr. Call had told them of a domestic fight at that location. "We have previously acknowledged that 'a domestic violence complaint' is 'one of the most potentially dangerous, volatile arrest situations confronting police.'" *Id.* at ¶ 25 (quoting *State v. Richards,* 779 P.2d 689, 691 (Utah Ct.App.1989)). According to Mr. Call's report, the fight was ongoing and the victim's abuse was severe.

¶ 17 When Vallasenor–Meza answered the door, he was hesitant to show his hands and reluctant to speak to the officers outside of the residence. His actions were so alarming that one of the officers found it necessary to draw his weapon. Vallasenor–Meza initially told the officers that someone was in the residence, only to retract that statement moments later.

¶ 18 Vallasenor–Meza argues that although he had initially acted suspiciously, he eventually cooperated fully and explained to the officers that there had been a fight, but the woman involved had since gone to work. He asserts that the officers should have called the woman's work to confirm his statement, rather than to enter the home. The notion that police officers must follow up on any explanation offered by a suspect before entering a potentially dangerous situation would essentially nullify the exigent circumstances exception to the warrant requirement. The officers legitimately feared for the safety of the victim and were justified in their concern and actions.

¶ 19 Alternatively, Vallasenor–Meza argues that the officers should have secured a warrant once he agreed to come outside. This argument, however, is misguided, as it also ignores the purpose of the exigent circumstances exception to the warrant requirement. The officers reasonably believed that they did not have time to get a warrant because the victim was potentially inside the residence injured or unconscious, and that their immediate intervention was necessary. *See State v. Comer,* 2002 UT App 219, ¶ 26, 51 P.3d 55.

## C. Consent to the Search

¶ 20 Vallasenor–Meza asserts that his consent to Sergeant Mallinson was not given voluntarily and was not attenuated from the other officers' prior illegal entry into the residence. We have no occasion to address this matter as we have already determined that the officers' entry into the home was appropriate as the result of probable cause and exigent circumstances.

## CONCLUSION

¶ 21 Accordingly, we affirm.

¶ 22 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.